Honorable Leif B. Erickson
Federal Magistrate Judge
Missoula Division
Russell E. Smith Courthouse
201 East Broadway, Room 370
Missoula, MT 59802

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

_____

| | |
|---|---|
| GENE PETERSON, | |
| | CAUSE NO. CV-05-188-M-LBE |
| Plaintiff, | |
| | |
| vs. | ORDER and |
| | FINDINGS & RECOMMENDATION |
| | OF UNITED STATES |
| CITY OF HAMILTON, | MAGISTRATE JUDGE |
| HAMILTON POLICE DEPARTMENT, | |
| and Does I-V inclusive, | |
| | |
| Defendants. | |

_____

Plaintiff commenced this civil rights action pursuant to 42 U.S.C. § 1983 against the City of Hamilton, the Hamilton Police Department and Does I-V.  Defendants City of Hamilton and Hamilton Police Department have moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted.  The Court enters the following:

### RECOMMENDATION and ORDER

IT IS RECOMMENDED that Defendants' Motion to Dismiss (Doc. No. 3) be **GRANTED** and that as to the moving Defendants the complaint be dismissed with prejudice.

In light of the recommendation that the motion to dismiss be

1

granted, IT IS ORDERED that the preliminary pretrial conference initially scheduled for June 1, 2006 is continued without date pending the ruling of the District Judge reviewing this report and recommendation.

IT IS FURTHER ORDERED that the clerk shall serve a copy of the Findings and Recommendation upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DONE and DATED this 9th day of May, 2006

/s/ Leif B. Erickson
Leif B. Erickson
United States Magistrate Judge


## RATIONALE

### I.   BACKGROUND

Because this case is currently before this Court on a motion to dismiss, the following facts alleged by Plaintiff in his complaint will be taken as true for the purposes of this motion:

Plaintiff and his neighbor, Henry Deck, were involved in various disputes during the latter part of 2004.  Compl. ¶¶ 5, 7 (Nov. 17, 2005).  Though both Plaintiff and Deck had occasionally contacted the Hamilton Police Department complaining of the other's actions, the police did not respond to these complaints. Compl. ¶¶ 5-8.  On May 15, 2005, Deck sprayed Plaintiff with a

garden hose whereupon Plaintiff contacted the Hamilton Police Department.  Compl. ¶ 9.  Officer Peter Seymour responded to the call and spoke with Deck, who admitted to spraying Plaintiff. Compl. ¶ 11.  Neither Officer Seymour nor the Hamilton Police Department decided to arrest or prosecute Deck.  Compl. ¶ 12.

Based on that scenario Plaintiff filed this action, alleging that Defendants, acting under the color of state law, deprived Plaintiff of rights and/or privileges protected by the United States Constitution, the Montana Constitution, and other Montana laws by "failing to enforce the laws of the State of Montana upon request and information."  Compl. ¶ 16.  Though not specifically asserted in his complaint, Plaintiff apparently bases his federal claim on an alleged violation of his due process rights under the Fourteenth Amendment.  Pl.'s Response Br. 6 (Dec. 28, 2005).  To the extent Plaintiff seeks to premise § 1983 liability on a violation of state law, his claim fails.  Violation of a state constitution or other state laws does not give rise to a federal cause of action under § 1983.  *See eg. Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir.1994).

Plaintiff also alleges that Defendants violated the Eighth Amendment to the United States Constitution by acting with deliberate indifference to the health and safety of Plaintiff. Compl. ¶¶ 17-19.

Defendants now move to dismiss Plaintiff's complaint in its

entirety pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that
(1) the Eighth Amendment is inapplicable because the Plaintiff is
not a convicted prisoner, and (2) Plaintiff's § 1983 claim is not
actionable because: (i) the City was not required to arrest Deck;
(ii) Plaintiff has not alleged that a City policy or custom
caused the violation of his federally protected rights; and (iii)
Plaintiff has not and cannot allege which of his federally
protected rights was violated.  Furthermore, Defendants also
assert that the Hamilton Police Department is not a proper party
to this action, and should therefore be dismissed as a Defendant.
Defs.' Br. in Support of Mot. Dismiss, 13 (Dec. 12, 2005).

## II.  APPLICABLE LAW - DEFENDANTS' MOTION TO DISMISS

Under Fed. R. Civ. P. 12(b)(6) a complaint should not be
dismissed unless it appears beyond doubt that the plaintiff can
prove no set of facts in support of his claim that would entitle
him to relief.  *Tanner v. Heise*, 879 F.2d 572, 576 (9th
Cir.1989); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The
court must accept all allegations of material fact as true,
*Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740
(1976), and construe the pleading in the light most favorable to
the moving party.  *Tanner*, 879 F.2d at 576.  "A complaint should
not be dismissed if it states a claim under any legal theory,
even if the plaintiff relies on a different legal theory."
*Haddock v. Board of Dental Examiners of California*, 777 F.2d 462,

464 (9ᵗʰ Cir.1985).  Finally, "dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1196 (9ᵗʰ Cir.1998) (quoting *Chang v. Chen*, 80 F.3d 1293, 1296 (9ᵗʰ Cir.1996).  *See also Polich v. Burlington Northern, Inc.*, 942 F.2d 1467, 1472 (9ᵗʰ Cir.1991).

Nonetheless, dismissal can still be granted if there is a lack of a cognizable legal theory or if there is an absence of facts pled sufficient to support a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9ᵗʰ Cir.1984).  Even a liberal interpretation of a civil rights complaint may not supply essential elements of a claim that the plaintiff failed to plead initially.  *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9ᵗʰ Cir.1982).  Additionally, the Court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9ᵗʰ Cir.1994) (citing *Papasan v. Allain*, 478 265, 286 (1986)).

## III. DISCUSSION

### A.    42 U.S.C. § 1983 Claim

In general, to establish a claim under 42 U.S.C § 1983, a "plaintiff must show '(1) that the conduct complained of was

5

committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right.'" *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1988). In this instance Plaintiff has elected not to sue the officer individually, although there is no dispute that he was acting under color of state law. The only issue with the officer is whether his conduct violated the Plaintiff's constitutional rights because, to impose section 1983 liability on a local governmental entity, a plaintiff must demonstrate: "(1) that [he] possessed a constitutional right of which he was deprived; (2) the municipality had a policy, custom, or practice; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Harry A. v. Duncan*, 351 F.Supp.2d 1060, 1069 (D.Mont.2005) (citing *Oviatt v. Pierce*, 954 F.2d 1470, 1474 (9th Cir.1992)).  If the officer did not violate Plaintiff's constitutional rights then it follows, *a fortiori,* that the municipality did not.

      1.   <u>Existence and Deprivation of a Constitutional Right</u>

In claiming that the Defendants deprived Plaintiff of his rights by "failing to enforce the laws of the State of Montana," Plaintiff apparently alleges that the Defendants' failure to arrest or prosecute Deck violated his constitutional right to due

process under the Fourteenth Amendment.[1]  *See* Compl. ¶¶ 17-19;
Pl.'s Response Br. 5.  However, according to the Ninth Circuit,
"[t]here is, in general, no constitutional duty of state
officials to protect members of the public at large from crime."
*Balistreri*, 901 F.2d at 699-700 (citing *Martinez v. California*,
444 U.S. 277, 284-85 (1980)).  While no such general duty exists,
"such a duty may arise by virtue of a 'special relationship'
between state officials and a particular member of the public."
*Balistreri*, 901 F.2d at 700.

> To determine whether a "special relationship" exists, a
> court may examine the following factors: (1) whether the
> state created or assumed a custodial relationship toward the
> plaintiff; (2) whether the state affirmatively placed the
> plaintiff in a position of danger; (3) whether the state was
> aware of a specific risk of harm to the plaintiff; or (4)
> whether the state affirmatively committed itself to the
> protection of the plaintiff.

*Id*. (internal citations omitted).

Plaintiff has not alleged facts which would give rise to
such a "special relationship" under the factors delineated above.
As for the first factor, Plaintiff does not allege that the
Defendants ever took Plaintiff into custody or restrained him in
any way.  Therefore, the state never created nor assumed a
custodial relationship toward the plaintiff.  Similarly,

---

[1] This is an awkward analysis because the complaint speaks in
terms of the Defendants not taking action to arrest Plaintiff's
neighbor, when, of course, it is only the named officer, or other
officers perhaps, who could have effected the neighbor's arrest.

Plaintiff has not alleged facts that could satisfy the second factor.  Plaintiff alleges the Defendants' *failure* to act comprised a constitutional violation, but fails to point to any affirmative actions by the Defendants which placed him in danger. *See* Compl. ¶¶ 6, 8, and 12.

While the facts alleged in the complaint could, at first glance, satisfy the third and fourth factors, a closer examination reveals otherwise.  Plaintiff alleges he had contacted the police in the past concerning Deck, and informed the responding officer that Deck had sprayed Plaintiff with a garden hose.  Compl. ¶¶ 5,9.  Taking these allegations as true, Plaintiff could conceivably argue that "the state was aware of a specific risk of harm to the plaintiff," thereby satisfying the third factor.  *See Balistreri*, 901 F.2d at 700.  Further, Plaintiff could argue that Officer Seymour's response to Plaintiff's call constituted an affirmative commitment from the state to protect Plaintiff.  *See Id.*

However, the United States Supreme Court has held that more is required in order to establish a special relationship in the § 1983 context.  *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989).  In *DeShaney*, a social services agency had recorded multiple incidents indicating that a child was being physically abused by someone in his household, yet failed to remove him from his father's custody.  *Id.* at 192-93.

8

Subsequent to these reports and the Department of Social Service's (DSS) failure to act, the child suffered such a severe beating at the hands of his father that he was rendered permanently disabled. *Id.* at 193. [2]

In declining to impose § 1983 liability against the County DSS, the Court noted that its previous decisions recognizing "affirmative [constitutional] duties of care and protection . . . stand only for the proposition that when the State takes a person into custody and hold [sic] him there against his will, the Constitution imposes on it a corresponding duty to assume some responsibility for his safety and general wellbeing . . . The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* at 200.

The Ninth Circuit focused on this language in similarly refusing to impose § 1983 liability in *Balistreri*, where Jena Balistreri was severely beaten by her husband, whom the police refused to arrest. 901 F.2d at 697. at 697-98.  Following

---

[2] Note that in *DeShaney* there was at least a showing of some subsequent event following the failure to intervene which resulted in harm to the Plaintiff.  Here the Plaintiff has made no such claim, only that as a consequence of the failure to arrest he has somehow suffered some injury.  Plaintiff sets forth no facts explaining what event has transpired following the failure to arrest the transgressing neighbor that has caused harm as a consequence of the failure to arrest.

*DeShaney*, the Ninth Circuit concluded that the state's "knowledge of DeShaney's plight and its expressions of intent to help him were no greater than its knowledge of Balistreri's plight and its expressions of intent to help her. *Id.* at 700. The Court thus held that Balistreri had not alleged a special relationship and dismissed her due process claim on that basis. *Id.*

This same reasoning applies to the present case. Here, even though the state knew of Plaintiff's predicament and though the police response could potentially be construed as an expression of intent to help him, no limitation was imposed on plaintiff's freedom to act on his own behalf. *See DeShaney*, 489 U.S. at 200. This case involves a dispute between neighbors encompassing inhibited access to Plaintiff's driveway, harassing looks from Plaintiff's neighbor, and the spraying of Plaintiff with a garden hose. Compl. ¶¶ 5, 7, and 9. These allegations do not rise even to the level of the situation the Ninth Circuit examined in *Balistreri*, where the Court found no special relationship existed and therefore denied § 1983 liability. *See Balistreri* at 697-98. Because there is no general constitutional duty of "state officials to protect members of the public at large from crime," *Id*. at 699-700, and because Plaintiff cannot establish the existence of a special relationship between Defendants and himself, this Court concludes that Plaintiff has not pled facts sufficient to show violation of "a constitutional right of which

he was deprived" under federal law.  *See Harry A.*, 351 F.Supp.2d at 1069.  Thus, Plaintiff's due process claim fails.

Much of the parties' briefing in this case centered on whether Defendant's had an obligation to arrest Deck pursuant to Montana's public duty doctrine.  *See* Def.'s Br 3-8, Pl.'s Response Br. 2-5, Def.'s Reply Br. 3-6.  This doctrine holds that a police officer has no duty to protect a particular individual absent a special relationship.  *Phillips v. City of Billings*, 758 P.2d 772, 775 (Mont. 1988).  However, as was the case in the federal analysis, an exception to this general rule may be established by demonstrating the existence of a special relationship between the state and the individual.  *Id.*  (*See also Nelson v. Driscoll*, 1999 MT 193, ¶ 21, 983 P.2d 972, ¶ 21.  A special relationship can be established:

> (1) by a statute intended to protect a specific class of persons of which the plaintiff is a member from a particular type of harm; (2) when a government agent undertakes specific action to protect person or property; (3) by governmental actions that reasonably induce detrimental reliance by a member of the public; and (4) under certain circumstances, when the agency has actual custody of the plaintiff or of a third person who causes harm to the plaintiff.

*Nelson* at ¶ 22.

Plaintiff has not asserted the existence of a statute intending to protect a class of persons to which Plaintiff belongs from the particular harm allegedly suffered here.  Nor has Plaintiff alleged facts demonstrating that Defendants

undertook any such specific action to protect Plaintiff or his property.  In fact, it was Officer Seymour's *failure* to take any such action that serves as the basis of Plaintiff's complaint. Compl. ¶¶ 6, 8, and 12.  Plaintiff has similarly failed to allege any facts tending to demonstrate that the City or its agents took actions which "reasonably induce[d] detrimental reliance" by him, *See Nelson* at ¶ 22, but rather has complained of the City's failure to act.  Compl. ¶¶ 6, 8, and 12.  Finally, Plaintiff does not assert, and there are no facts to suggest, that the City or the Police Department had custody of Plaintiff.

Because Plaintiff has failed to allege facts falling into any of the four exceptions allowing for the existence of a special relationship, the City and its police officers had no duty to protect Plaintiff under Montana's public duty doctrine. In any case, even if Defendants had owed such a duty to Plaintiff, a violation of a state constitution or other state laws would not give rise to a federal cause of action under § 1983.  *See e.g. Malek*, 26 F.3d at 1016.

Finally, Plaintiff argues that the state-created danger theory applies in this case to provide a federally protected right of which Plaintiff was allegedly deprived.  Pl. Br. 6 (Dec. 28, 2005).  The state-created danger theory exists as a second exception (the existence of a "special relationship" being the first) to the general rule that the state is not responsible for

providing its citizens with a minimal level of security. *Kennedy v. City of Ridgefield*, 411 F.3d 1134, 1142 (9th Cir.2005). The state-created danger exception provides that a constitutional duty to provide such security may be imposed when state actors have affirmatively acted to create the plaintiff's danger, or to render him or her more vulnerable to it. *Wood v. Ostrander*, 879 F.2d 583, 589-90 (9th. Cir.1989).

To state an actionable § 1983 claim under the state-created danger theory, the "plaintiff must demonstrate, at the very least, that the state acted affirmatively, and with deliberate indifference, in creating a foreseeable danger to the plaintiff, leading to a deprivation of the plaintiff's constitutionally protected rights." *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1059 (9th Cir.1998).

Here, Plaintiff fails to allege any affirmative action on the part of the Defendants or Officer Seymour. The basis of Plaintiff's claim is the Defendants' *failure* to act, which cannot serve as the basis for a § 1983 claim pursuant to the state-created danger theory. Because Plaintiff has not alleged facts which could demonstrate that any affirmative action by the state created any danger in this case, Plaintiff's state-created danger theory fails as a matter of law.

2.   <u>Existence of a policy, custom, or practice</u>.[3]

For Plaintiff to plead a viable § 1983 claim, he must also point to the existence of a policy, custom, or practice.  *Harry A.*, at 1069.  Indeed, the Ninth Circuit recently stated that "[l]iability may attach to a municipality only where the municipality itself causes the constitutional violation through execution of a government's [sic] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir.2005) (citing *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984 (9th Cir.2002)).

Under *Menotti*, there are three ways to show the existence of a municipality policy or custom: "(1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either

---

[3] Since I do not find a violation of Plaintiff's constitutional rights has occurred in the first instance it is not ordinarily  necessary to address the remaining elements of municipal liability.  However, since this is going forward to the District Judge on a Report and Recommendation and thus subject to review, I will do so in the event there is disagreement with that initial finding.

delegated that authority to, or ratified the decision of, a subordinate."  409 F.3d at 1147 (quoting *Ulrich* at 984-85) (internal quotation marks omitted).

Here, Plaintiff has not alleged the existence of a "longstanding practice or custom" constituting the "standard operating procedure" of the City of Hamilton.  *See Id.*  Plaintiff alleges the Hamilton Police Department failed on several occasions to take any action in response to his complaints about his neighbor.  *See* Compl. ¶¶ 5-13.  Even if this alleged pattern could be construed as a practice or custom, Plaintiff has failed to allege or explain how such conduct could constitute a "standard operating procedure" of the City of Hamilton.  On the contrary, pursuant to Montana Code Annotated § 46-6-311(1), a police officer's decision to arrest is purely discretionary in Montana.  That statute provides, in pertinent part, that "[a] peace officer *may* arrest a person when a warrant has not been issued if the officer has probable cause . . ."  Mont. Code Ann. § 46-6-311(1).  Because the decision to arrest is within the discretion of the responding officer, any action or inaction on the part of the Hamilton Police Department cannot be said to constitute the "standard operating procedure" of the City of Hamilton.

Moreover, Plaintiff has failed to allege the "decision-making official was, as a matter of state law, a final

policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision." *See Menotti*, 409 F.3d at 1147.  Here, the "decision-making official" was not a "final policymaking authority" under Montana law.  Instead, as discussed in the preceding paragraph, the decisions at issue in this case were made by subordinate police officers exercising their discretion.  Such an exercise of discretion does not constitute "final policymaking authority" nor can it fairly be said to "represent official policy in the area of decision." *See id*.

Although his complaint is silent on this matter, Plaintiff asserts in response to Defendants' motion that a policy or custom was established because an "official with final policy making authority either delegated that authority to, or ratified the decision of, a subordinate." *See id*; Pl. Response Br. 5.  In support of this proposition, Plaintiff points to *Menotti*, where the chief policymaker for the City of Seattle delegated authority to his police chief to enforce a specific directive. 409 F.3d at 1147.  Under those facts, the Ninth Circuit found Seattle's Mayor had "delegated that authority to ... a subordinate," and that a policy could be found.  *Id*.

Plaintiff has not alleged any facts to suggest that such a delegation of authority occurred here. Whereas in *Menotti* the Mayor had expressly delegated authority to enforce a specific

16

directive, Plaintiff has not alleged that a city official with "final policymaking authority" delegated any such authority to, or ratified the decision of, Hamilton police officers here.  By contrast, this case involves the permissible exercise of discretion by police officers while carrying out their duties. For this reason, Plaintiff's claim that "city policy was established as a delegation of authority" fails.

The Ninth Circuit in *Menotti* also stated that a "municipal policy may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Id.*  However, as discussed above, because no constitutional violations occurred in this case, such an inference cannot be made here.   For the foregoing reasons, Plaintiff has not demonstrated that the city had a policy, custom or practice.  *See Harry A.*, 351 F.Supp.2d at 1069.

3.    Policy amounts to deliberate indifference to
      Plaintiff's constitutional right

The third requirement necessary to impose § 1983 liability on a local government is a showing that "the policy amounts to deliberate indifference to plaintiff's constitutional right." *Harry A.*, 351 F.Supp.2d at 1069.  Here, because Plaintiff has not established the existence of such a "policy," and because citizens do not possess a constitutional right to safety and security in the absence of a special relationship or a state-created danger, it

17

follows that Plaintiff cannot satisfy this third requirement.

    4. <u>Policy as the Moving Force behind the constitutional violation</u>

  The fourth requirement necessary to impose § 1983 liability on a local government demands the plaintiff demonstrate that "the policy was the moving force behind the constitutional violation." *Harry A.*, 351 F.Supp.2d at 1069.  Again, because Plaintiff has not established a constitutional violation or the existence of a "policy," he similarly cannot satisfy this requirement.  In any event, the alleged harm in this case, Plaintiff being sprayed with a garden hose, occurred *before* the police were summoned. Compl. ¶¶ 9-12.

  **B. Eighth Amendment Claim**

  Plaintiff also alleges in his complaint that Defendants violated his Eighth Amendment right by acting with deliberate indifference to his health and safety.  (Compl. ¶ 19.).  However, the Eighth Amendment was "designed to protect those convicted of crimes."  *Ingraham v. Wright*, 430 U.S. 651, 664 (1977). Therefore, its protections do not attach until after conviction and sentence.  *See id.* at 671 n. 40.  Because Plaintiff has not been convicted of a crime, he cannot state an Eighth Amendment claim.

  Plaintiff urges this Court take an "un-traditional approach" that would not require a conviction for the Eighth Amendment to

be implicated.  (Pl.'s Br. 2).  Plaintiff quotes the following language from the *Ingraham* case in support of his proposition: "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."  *Ingraham* at 671 n. 40. Pointing to this language, Plaintiff asserts that the U.S. Supreme Court "may be open to untraditional claims not associated with criminal prosecutions."  Pl.'s Response Br. 2.

Plaintiff misreads the Court's language.  The Court's language requires a "[c]riminal prosecution" before the Eighth Amendment is applicable.  *Id*.  While Plaintiff's argument appears to seize on the Court's use of the word "traditional," this word modifies the constitutional guarantees associated with criminal prosecutions, *not* whether Eighth Amendment scrutiny is appropriate in the absence of a criminal prosecution.[4]  Moreover, the Court's subsequent language in the footnote cited by Plaintiff dispels any possibility the Supreme Court may be open the "untraditional claims" suggested by Plaintiff.  The Court specifically concluded that, "the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in

---

[4] For Plaintiff's argument in favor of untraditional claims to have any merit, the Court would had to have written that "Eighth Amendment scrutiny is *traditionally* appropriate only after the State has complied with the constitutional guarantees associated with criminal prosecutions."

19

accordance with due process of law." *Id.*

In this case, the Plaintiff claims that the Defendants failure to arrest and/or prosecute his neighbor constituted deliberate indifference to Plaintiff's safety and welfare, thus violating the Eighth Amendment. But because the Plaintiff has not been convicted of a crime, his Eighth Amendment claim fails as a matter of law.

### C. Police Department as Proper Party

Because this Court finds that Plaintiff's claims lack merit, and are thereby subject to dismissal, the question of whether the Hamilton Police Department is a proper party to this action is moot. Even if this issue was not mooted, however, Plaintiff's claim against the Hamilton Police Department would fail because the Police Department is not a proper defendant in this action. The Hamilton Police Department is not a distinct legal entity capable of suing or being sued, and therefore is not a proper defendant in a § 1983 action. *See Boren v. City of Colorado Springs*, 624 F.Supp.474 (D. Colo. 1985); *Gillespie v. City of Indianapolis*, 13 F.Supp.2d 811, 816 (S.D. Ind. 1988).

### D. Doe's I-V

Plaintiff included in his complaint "Does I-V" as defendants. Fed.R.Civ.P. 4(m) provides in pertinent part:

> If service of the summons and complaint is not made upon the defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice

to the plaintiff, shall dismiss the action without prejudice
as to that defendant or direct that service be effected
within a specified time; provided that if the plaintiff
shows good cause for the failure, the court shall extend the
time for service for an appropriate period.

In this case, Plaintiff filed his complaint on November 17, 2005.
More than 120 days have now elapsed and Plaintiff has neither
named nor served the unidentified "Does I-V."  Accordingly, the
Court recommends dismissing the action without prejudice as to
the unidentified "Does I-V."  Moreover, it appears from the facts
alleged that Plaintiff can not make out a conceivable § 1983 or
Eighth Amendment claim with regard to any potential defendant.